Mark L. Javitch (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff*
Jewish Legal News, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| JEWISH LEGAL NEWS, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br>Defendant. | Case No.: _____<br><br>**COMPLAINT** |

Jewish Legal News, Inc. ("JLN" or "Plaintiff"), by and through its undersigned counsel, alleges as follows:

1.      This is an action under the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief by the JLN against the United States Department of State ("State Department" or "Defendant").

2.      JLN is an online magazine located at www.jewishlegalnews.com that covers important debates and issues in the Jewish communities in the US, Israel, and worldwide.

3.      By this action, JLN seeks to compel the State Department to comply with their obligations under FOIA to release the requested records in their possession regarding the Biden Strategy

COMPLAINT                                    1                        _____

on Antisemitism that Ambassador Deborah Lipstadt recently announced on behalf of the Biden

Administration on May 25, 2023.

4.     Defendant has improperly withheld the records requested by Plaintiff in violation of

FOIA and in opposition to the public's strong interest in obtaining information regarding how the Biden

Antisemitism strategy was formulated. Specifically of interest is how the strategy departed from the

longstanding and widely supported definition of antisemitism put forward by the International Holocaust

Remembrance Association ("IHRA") and previous presidential administrations.

5.     The records were requested on behalf of Plaintiff and Plaintiff is statutorily entitled to

disclosure of these records, which it seeks so that it may inform the public about this important issue.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action and personal jurisdiction over

Defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## DIVISIONAL ASSIGNMENT

8.     Pursuant to Civil L.R. 3-2(c) and 3-5(b), this action should be assigned under Civil L.R.

3-2(c) and (d) to the San Francisco or Oakland division because it arose in San Mateo County, CA.

## PARTIES

9.     Plaintiff Jewish Legal News, Inc. is a nonprofit California corporation located at 3 East

3rd Ave., Ste. 200, San Mateo, CA 94401.

10.     Defendant State Department is an agency of the federal government within the meaning

of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702, which has possession, custody, and/or control

of the records that Plaintiff seeks. The State Department's headquarters is located at 2201 C St., NW

Washington, DC 20520.

COMPLAINT                                            2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

11.     Service upon an officer, sued in his/her official capacity, or upon an agency or corporation of the United States is accomplished by serving the United States, and by sending a copy of the summons and of the complaint by registered or certified mail to the officer, agency, or corporation. *See* Fed. R. Civ. P. 4(i)(2); 28 U.S.C. § 1391(e)(3).

## FACTUAL ALLEGATIONS
### Background

12.     In May 2023, The White House announced a new 60-page strategy to counter antisemitism in the United States.

13.     Citing an alarming rise in hate crimes that disproportionately impact American Jews, the administration seeks to increase awareness and understanding of antisemitism, including how it threatens America, and broaden appreciation of Jewish American heritage.

14.     According to the strategy, the administration aims to improve safety and security for Jewish communities, reverse the normalization of antisemitism and counter antisemitic discrimination, and build "cross-community" solidarity and collective action to counter hate.

15.     But with such a strong ambition to fight antisemitism, many Jewish groups questioned why, in adopting the new strategy, the Biden Administration retreated from the longstanding definition of antisemitism that enjoyed wide ranging consensus among Jewish groups. *See e.g.*, Nava, Victor. "Jewish groups 'extremely disturbed' and say Biden 'blew it' on policy to counter anti-Semitism." *The New York Post*, May 25, 2023 (last accessed August 18, 2023).[1]

16.     Where to draw the line at what constitutes antisemitism is perhaps one of the most controversial issues in the Jewish community today.

---

[1] https://nypost.com/2023/05/25/jewish-groups-extremely-disturbed-and-say-biden-blew-it-on-policy-to-counter-anti-semitism

COMPLAINT                                    3

17.     Some Jewish groups fear that narrowing the definition of antisemitism will encourage attacks on Jews and Israel that cross the line from fair criticism into antisemitism.

18.     Further, although it was announced as a strategy to fight antisemitism, it was criticized for reframing antisemitism in the context of general anti-racism policy rather than specifically addressing the unique issues presented by antisemitism.

19.     As Jacob Olidort, director of the Center for American Security and its Middle East Peace Project at the America First Policy Institute, points out, "Charlottesville" appears four times in US President Joe Biden's two-page cover letter, including in the first sentence. "Judaism" appears seven times in the strategy document and "Zionism" does not appear at all. The acronym "LGBTQI+" appears seven times, "gender" seven times, "equity" 10 times, and "Islamophobia" 21 times.[2]

20.     The Biden Administration's strategy paper appears to omit or deemphasize actual existing forms of antisemitism that may be politically more difficult to identify given competing considerations, including that of Islamists,[3] the Iranian regime,[4] the Palestinian Authority,[5] the BDS movement,[6] anti-Israel movements on university campuses,[7] or even physical attacks on Orthodox Jews in Brooklyn.[8]

---

[2] https://www.jpost.com/diaspora/antisemitism/article-748283

[3] https://www.timesofisrael.com/islamist-antisemitism-in-the-us-masked-by-alliance-with-far-left-study/

[4] https://www.jpost.com/diaspora/antisemitism/article-708487

[5] https://www.jewishvirtuallibrary.org/palestinian-anti-semitism-history-and-overview

[6] https://www.ngo-monitor.org/key-issues/bds/bds-and-antisemitism/

[7] https://www.timesofisrael.com/report-finds-anti-israel-incidents-on-us-campuses-harming-jewish-student-life/

[8] https://www.nytimes.com/2022/04/26/nyregion/antisemitic-attacks-new-york.html

21.     It "embraces" the IHRA definition of antisemitism, which includes attacks directed against Israel, but does not officially adopt it.

22.     Rather than solely using the IHRA definition of antisemitism favored by numerous mainstream Jewish organizations, the White House strategy calls several definitions of antisemitism "valuable."

23.     "The most prominent is the non-legally binding 'working definition' of antisemitism adopted in 2016 by the 31-member states of the IHRA, which the United States has embraced," the White House strategy acknowledges.

24.     The document continues, "[i]n addition, the Administration welcomes and appreciates the Nexus Document and notes other such efforts."

25.     According to the Zionist Organization of America, the Nexus Document states that opposition to Zionism – i.e., the right of the Jewish people to self-determination and to live as a nation-state in their religious and ancestral homeland – is not necessarily antisemitic.

26.     Many now criticize the integration of the Nexus definition for not appreciating that for many, if not most Jews, their connection to their religious and ancestral homeland of Israel is an essential part of their Jewish identity. *See e.g.*, Schuss, Deborah Gastfreund. "The US must wake up and take antisemitism more seriously - opinion." *The Jerusalem Post*, July 16, 2023 (last accessed August 18, 2023).[9]

27.     The IHRA definition was widely accepted across previous administrations because it addressed Jew-hatred from both the Right and Left. It gave valuable contemporary examples of

---

[9] https://www.jpost.com/opinion/article-750171

antisemitism, such as comparing Israeli policy to that of the Nazis and applying double standards to Israel not expected of any other democratic nation.

28.   The Nexus definition, by contrast, backtracks from those clearly delineated examples. It states that paying disproportionate attention to Israel and treating it differently than other countries is not proof of antisemitism. And it says opposition to Zionism or Israel doesn't necessarily reflect Jew hatred or "purposefully lead to antisemitic behaviors and conditions."

29.   Drawing a distinction between antisemitism and anti-Zionism, as the Nexus does, provides cover to those who want to mask their antisemitism under the guise of being "anti-Israel." In announcing the new strategy on behalf of the Biden Administration, unfortunately, Amb. Lipstadt did not address any of these concerns.

30.   On July 30, 2021, President Biden appointed Deborah Lipstadt as a special envoy of the Biden Administration to fight antisemitism.

31.   Her role is to "lead U.S. efforts to fight antisemitism across the globe."[10] As an ambassador position, her nomination required Senate Confirmation.

32.   Her nomination was delayed in the Senate for several months in part for accusing Republican Senator Ron Johnson of "white supremacy/nationalism."[11]

33.   Lipstadt "apologized for the manner in which she criticized Johnson's comments and acknowledged that she was not as 'nuanced' as she would have liked, adding: 'I've also learned not to tweet in the middle of the night. Bad thing to do.'"[12]

---

[10] https://meng.house.gov/media-center/press-releases/us-special-envoy-monitor-and-combat-antisemitism-visits-queens-event

[11] https://twitter.com/deborahlipstadt/status/1371073969961467905

[12] https://www.politico.com/news/2022/02/08/malicious-poison-ron-johnson-antisemitism-envoy-jan6-00006702

COMPLAINT                                           6

34.    On March 31, 2022, Amb. Deborah Lipstadt was confirmed by the Senate.

35.    In May, Amb. Lipstadt issued public remarks regarding the new antisemitism strategy. On May 25, 2023, Amb. Lipstadt said "This is a historic moment in the modern fight against what's known as the world's oldest hatred."

36.    But, like the Biden antisemitism strategy generally, her statement failed to address modern sources of antisemitism.

37.    Further, Amb. Lipstadt's remarks did not mention, highlight, or explain to Americans that under the new plan, the IHRA definition had actually just been weakened by incorporating the Nexus definition.

38.    Strangely, not only did Amb. Lipstadt overlook the most threatening forms of antisemitism, actually represented within the Nexus document, Amb. Lipstadt also appears to be mistaken when she does "identify" antisemitism."

39.    What she identifies does not even bear a resemblance to any antisemitism definition.

40.    For instance, Amb. Lipstadt made a bizarre statement in July 2022 implying that violence committed by an Orthodox Sect of Judaism on secular American Jews visiting Israel constituted antisemitism.[13] Of course, the violence was an abomination, but it is unclear how violence committed by Orthodox Jews on secular Jews could satisfy any definition of antisemitism.

41.    To further explain the above discrepancies, JLN sought background on efforts by Amb. Lipstadt to alter the existing definition of antisemitism.

---

[13] "Let us make no mistake, had such a hateful incident — such incitement — happened in any other country, there'd be little hesitation in labeling it antisemitism," https://www.timesofisrael.com/us-antisemitism-envoy-deeply-disturbed-by-western-wall-egalitarian-services-fracas/ (last accessed August 18, 2023).

42.     JLN's requests sought to understand why the administration decided against the view of many Jewish groups, why it decided to retreat from the longstanding, widely accepted IHRA definition, why it decided to integrate the Nexus definition, and Ambassador Lipstadt's role in adopting the new strategy.

### Plaintiff's FOIA Request

43.     On July 1, 2023, attorney Mark L. Javitch, on behalf of JLN, submitted a FOIA request to The United States Department of State via the online FOIA portal ("the portal"). A true and correct copy of the request is attached to this Complaint as Exhibit "A" and is incorporated by reference herein.

The Request stated:

Jewish Legal News, Inc. requests communications sent from and received by Ambassador Deborah Lipstadt and/or her office regarding the strategy on antisemitism recently announced by President Biden in May 2023. (Date Range for Record Search: From 03/01/2022 To 07/01/2023)

*See* Exhibit "A".

44.     The Request complied with all applicable regulations regarding the submission of FOIA requests.

### **Defendant's Treatment of Plaintiff's FOIA Request**

45.     Defendant initially acknowledged Plaintiff's request.

46.     On July 1, 2023, Defendant sent an email assigning the request F-2023-10501. *See* Exhibit "B"

47.     The letter said "You will receive a formal acknowledgement to your request in no later than 10 working days. If the Department requires additional information from you, then you will also be notified."

48.     Also on July 1, 2023, Defendant sent another email letter stating that "the status of your FOIA request #F-2023-10501 has been updated to the following status 'Received'." *See* Exhibit "C".

49.     Federal agencies are required to respond to a FOIA request within 20 business days, unless there are "unusual circumstances." This time period generally begins when the request is received by the FOIA office of the Department of Justice component that maintains the records sought.

50.     On August 14, 2023, although 20 working days had already passed, and the response was due, Defendant sent another letter stating that unusual circumstances applied to the request. *See* Exhibit "D".

51.     Defendant did not timely respond indicating that unusual circumstances exist. The letter also failed to specify the date that the agency would respond, as required.

52.     Even if the additional time normally allotted for unusual circumstances applied, however, the agency failed to respond to the FOIA request within the 30 business days permitted for unusual circumstances.

53.     As of the filing of this Complaint, it has been more than 30 working days since the JLN's Request was submitted and acknowledged.

54.     In the letter, Defendant proposed to exclude "any compilations of publicly available news reports and any publicly available documents not created by the U.S. government, such as mass-distribution emails from news media."

55.     Plaintiff responded that it would decline Defendant's request to exclude news reports because what news reports Defendant was receiving would likely weigh on their decision in adopting the antisemitism strategy. *See* Exhibit "E".

56.     No further information or communication concerning the Request has been received or sent by Plaintiff.

57.     As of the date of this filing, Defendant has failed to: (i) produce the requested records or demonstrate that the requested records are lawfully exempt from production; (ii) notify Plaintiff of the

scope of any responsive records Defendant intends to produce or withhold and the reasons for any

withholdings; or (iii) inform Plaintiff that it may appeal any adequately specific adverse determination.

## CAUSE OF ACTION

### Violation of FOIA for Failure to Comply with Statutory Deadlines

58.    Plaintiff repeats and re-alleges the foregoing paragraphs.

59.    Defendant is an agency subject to FOIA.

60.    Plaintiff submitted a request. Through the Request, Plaintiff properly asked for records

within the possession, custody and/or control of Defendant.

61.    Defendant failed to make a determination with respect to Plaintiff's Request within the

20-working day deadline required by FOIA. 5 U.S.C. § 552(a)(6)(A).

62.    Defendant also failed to timely invoke the provision for additional time needed in the

cases of unusual circumstances.

63.    After the 20-working day period had elapsed, Defendant requested additional time for

unusual circumstances.

64.    Defendant also failed to specify any date that the request would be completed.

65.    Defendant failed to satisfy either the 20-working day period or the 30-working day period

for unusual circumstances.

66.    Plaintiff has and/or is deemed to have exhausted applicable administrative remedies with

respect to the Request. 5 U.S.C. § 552(a)(6)(A); *id*. § 552(a)(6)(C).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1) order Defendant to conduct a reasonable search for all records responsive to

   Plaintiff's Request, and to immediately disclose all non-exempt records responsive to

   the Request in their entirety, as well as all non-exempt portions of responsive records;

COMPLAINT                                           10

2)  issue a declaration that Plaintiff is entitled to disclosure of the records responsive to the Request;

3)  enjoin Defendant from continuing to withhold any and all non-exempt records or portions thereof responsive to Plaintiff's Request;

4)  award Plaintiff reasonable attorney's fees and costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

5)  grant such other relief as the Court may deem just and proper.

Dated: August 21, 2023                     Respectfully submitted,

                        By:  /s/ Mark L. Javitch
                             Mark L. Javitch (CA# 323729)
                             Javitch Law Office
                             3 East 3rd Ave. Ste. 200
                             San Mateo CA 94401
                             Tel: (650) 781-8000
                             Fax: (650) 648-0705
                             mark@javitchlawoffice.com

                             *Attorney for Plaintiff*
                             Jewish Legal News, Inc.

COMPLAINT                                11